ST. LOUIS, CAPE GIRARDEAU & FORT SMITH RAILWAY COMPANY, *Appellant*, v. HOLLADAY *et al.*

### Division Two, December 3, 1895.

1. **Garnishment:** JUDGMENT: RES JUDICATA. A judgment in a garnishment proceeding is binding upon the parties and can not be reopened in a subsequent proceeding without some allegation which would be sufficient on proof thereof to overthrow or invalidate any other judgment at law.

2. **Injunction:** CORPORATION: RECEIVER: PARTIES: PRACTICE. An application by attorneys of a corporation to have a receiver of it made a party to a suit by injunction, begun by the corporation before the appointment of the receiver, the application being made just before the cause was to be called for trial and under circumstances that would have necessitated a continuance to the next term, if granted, was properly refused, it appearing that the receiver was appointed eight months before, and no reason being shown why application should not sooner have been made, at a previous term of court.

3. **Corporation:** RECEIVER: PRACTICE: PARTIES: HARMLESS ERROR. A receiver himself is the proper person to ask to be made a party to a suit instituted against the corporation for which he was appointed before the appointment was made, and it is within the discretion of the court as to whether he will be permitted to intervene, and the refusal of the application will not constitute error.

4. **Receiver:** PRACTICE: PARTIES. It is not necessary to make a receiver a party to a suit where the parties are sufficiently represented before the court to enable it to properly determine the controversy.

5. ———: ———: ———. A receiver is a stranger to all proceedings instituted and in progress before his appointment and so remains until made a party by order of the court, and there is no legal objection to the action proceeding to final judgment without his being made a party.

6. **Practice:** CHANGE OF VENUE. But one change of venue can be granted to either party to a cause. (Revised Statutes, 1889, section 2258.)

St. L., C. G. & Ft. S. R'y Co. v. Holladay.

7. ——: ——: NOTICE. One or two hour's notice of intention to apply for a change of venue is not sufficient within the meaning of Revised Statutes, 1889, section 2262, requiring reasonable notice to be given.

8. ——: ——: DILIGENCE. An application for a change of venue, which states that the applicant obtained knowledge of the cause for which the change was asked since the last term of court, is not a sufficient compliance with the requirements of section 2261, Revised Statutes, 1889, in not being definite enough to enable the court to determine what diligence, if any, had been used in applying for the change after discovering the ground therefor.

9. ——: ——: UNDUE INFLUENCE. An application for a change of venue upon the ground that the opposite party had an undue influence over the mind of the court was properly refused, where it appeared that it was prepared before the party presenting it asked that a receiver be made a party, and presented immediately after the court's refusal to allow the receiver to be joined in the suit.

10. ——: JURISDICTION: ESTOPPEL. A party will not be permitted to submit himself to the jurisdiction of a court when he pretends to have information which should prompt him to at once oust that court of jurisdiction.

11. ——: SUPPLYING LOST PLEADINGS: NOTICE: ESTOPPEL. Where certain pleadings in a cause could not be found by the clerk, and counsel for defendant stated that he had consented to one of plaintiff's counsel taking them away more than a year before, that such counsel was not present, and that they had not since been seen, which statement was not contradicted, and defendant's counsel proposed to file certified copies in case the originals could not be found, to which offer plaintiff's counsel (who was present) made no objection, permission to file such copies, afterward given, over objection of plaintiff's counsel that notice of intention to file them had not been served on him or plaintiff or waived by either, will not constitute error, there being no pretense that the pleadings so supplied were not substantial, if not literal, copies.

12. ——: ——: POWER OF COURT. A court has the power, independent of the statute, to supply its missing papers, records, or files, notice first being given to persons having them to produce them.

13. ——: CONTINUANCE: ABSENCE OF COUNSEL. The postponement of a trial because of the absence of counsel is a matter resting largely in the discretion of the trial court, and its action will not be interfered with on appeal unless such discretion has obviously been abused.

14. ———: ———: ———. It is not error to refuse to continue a cause on account of the absence of counsel who is familiar with the facts, where no reason is given for his absence.

*Appeal from Carter Circuit Court.*—HON. JOHN G. WEAR, Judge.

AFFIRMED.

*M. R. Smith* for appellant.

(1) The court should have 'permitted Louis Houck to show cause why he, as receiver of plaintiff railway company, should not be made. party plaintiff in substitution of the railway company, and in that capacity prosecute this action against defendant. Beach on Receivers, secs. 692, 707, 708; *National Trust Co. v. Murphy,* 30 N. Y. Eq. 408; *Trust Co. v. Hoffman House,* (sup.) 27 N. Y. S. 634. (2) The change of venue ought to have been granted, or an opportunity given to elect, under the statutes, a special judge to try the case. The application went to the disqualification of the judge. R. S. 1889, sec. 2262; *State ex rel. v. Bacon,* 107 Mo. 627; *Corpenny v. Sedalia,* 57 Mo. 89; *Railway v. Railway,* 118 Mo. 619; *Dowling v. Allen & Co.,* 88 Mo. 300; *Barnes v. McMullin,* 78 Mo. 266. "From the time that the disqualification is ascertained, all the judicial powers of the regular judge cease so far as that case is concerned." *Lacy v. Barnett,* 75 Mo. 469. The disqualification of the regular judge, and election of a special judge, would not be a change of venue within the meaning of the statute, and this could have been done under the circumstances. *Koehler v. Criddle,* 30 Mo. App. 34; *State ex rel. v. Bacon,* 107 Mo. 632; *State v. Shipman,* 93 Mo. 147; *State v. Bulling,* 100 Mo. 87. Fair dealing and equal justice

demanded the election of a special judge, and the statute authorized it. (3) The court erred in permitting defendant to supply the petition and answer taken from the files, by consent of parties, by one of plaintiff's attorneys, by supposed copies thereof, without giving to plaintiff any notice whatever. Such action was without any authority of law. R. S. 1889, secs. 8403 and 8404, *et seq.* It was known that these pleadings were not lost or destroyed, but in the hands of one of the attorneys to the record, and who was delayed, without fault on his part. Notice was imperative. *George v. Middaugh,* 62 Mo. 549; *State v. Simpson,* 67 Mo. 647; *Adkinson v. Keel,* 25 Ala. 55; 1 Black on Judgments, sec. 125. (4) This cause ought to be reversed on account of the lower court's overruling plaintiff's motion for postponement of the trial on Tuesday, October 3, until Wednesday evening, October 4, 1893, at 3 o'clock P. M. The court's ruling under the circumstances in this case was erroneous. *State v. Maddox,* 117 Mo. 681, and citations. *Discretio est discernere per legem quid sit justum. Dooley v. Barker,* 2 Mo. App. 328; *State v. Cummings,* 36 Mo. 379. (5) The nonsuit was involuntary, caused by adverse rulings, precluding a recovery by plaintiff, which ought to be reviewed by this court. *Sachse v. Clingingsmith,* 97 Mo. 410; *Chiles v. Wallace,* 83 Mo. 93. The rule is that where the party has a valid and subsisting cause of action or defense, he must have his day in court. The exceptions are few, and only when and where the negligence and inattention would operate upon the opposite party as an injustice. 1 McQuillin's Plead. and Prac., sec. 509, and notes 51 and 52; *Carr v. Moss,* 87 Mo. 447; *Young v. Glasscock,* 79 Mo. 574; 1 McQuillin's Plead. and Prac., sec. 410, and citations. *Henslee v. Cannefax,* 49 Mo. 295.

*Dinning & Byrns* for respondents.

(1)    There was no error in the refusal of the court to make a rule on Louis Houck for him to show cause why he should not be made a party to this suit. He was not receiver of the plaintiff corporation, and this is the only reason assigned for wanting him made a party hereto. *State ex rel. v. Ross,* 122 Mo. 435. This suit was begun before the so-called appointment of Houck as receiver, and if his appointment had been valid it was not necessary to make him a party to this action. This suit having been begun by injunction defendant has a perfect right to look to the injunction bond for his payment and protection. *Heath v. Railroad,* 83 Mo. 617. (2) The pretended appointment of Mr. Houck as receiver of plaintiff's property and effects was made on the fourth day of March, 1893, which was prior to the April term, 1893, of the Carter county circuit court; there was no effort or suggestion made at the said April term of said court to have a rule of court upon Mr. Houck to show cause why he should not be made a party to this suit. (3) The court committed no error in overruling plaintiff's application for a change of venue. R. S. 1889, sec. 2260; *State ex rel. v. Matlock,* 82 Mo. 455. (4) The plaintiff voluntarily accepted and submitted to the jurisdiction of the circuit court after it had knowledge of the alleged undue influence. It can not be permitted to oust the court of its jurisdiction after having voluntarily accepted it, after a knowledge of the undue influence. *State ex rel. v. Matlock,* 82 Mo. 457. (5) The application for a change of venue came too late and no reasonable notice was given defendant. R. S. 1889, sec. 2262; *Railroad v. Railroad,* 118 Mo. 619. In no case shall more than one change of venue be granted either party. R. S. 1889, sec. 2258. Plaintiff had had one

change. (6) An application for a change of venue from the judge is a matter resting largely in the discretion of the court, and in the case at bar it was for the trial court to say whether the application was timely or the notice reasonable. *Wolff v. Ward*, 104 Mo. 145; *State ex rel. v. Matlock*, 82 Mo. 457; *State ex rel. v. Lubke*, 29 Mo. App. 555; *Perry v. Roberts*, 17 Mo. 40. Would this application have been filed if the court had granted the rule on Mr. Houck to show cause, etc? (7) The court committed no error in refusing to postpone the trial of this cause. No one is entitled to a continuance or postponement of his case where he himself has by his own negligence brought about the condition of things, the basis of his application. (8) The court committed no error in permitting the defendant to file copies of the amended petition and answer thereto. The originals were in the possession of Mr. Smith, who was at the time senior counsel in this case for plaintiff. No claim is made that the papers filed were not copies, but plaintiff objected to the filing of them in place of the originals, on the ground alone that plaintiff had not been notified of the intention to file them. Under the facts of this case plaintiff was not entitled to notice. The court has power independent of any statute to supply any lost or misplaced record. *State v. Simpson*, 67 Mo. 647.

SHERWOOD J.—This cause originated in Wayne county and was begun November 6, 1890. The ostensible object of this proceeding was to restrain defendant Holladay from collecting a judgment for the sum of $1,630, recovered by him in the Wayne circuit court in October, 1890, against the plaintiff company, as garnishee of Flaherty & Deavignon, who it seems were contractors on plaintiff's road, and to whom plaintiff owed that sum. The other defendant, Johnson, is

the sheriff of Wayne county. The petition admits that judgment was rendered against it on garnishment process in manner as above said; but there is no intimation, pretense, or excuse in the petition to the effect that any attempt was made by the garnishee plaintiff to plead some of the matters edalleg in the petition to be true, and which if true and had been pleaded, would have prevented any judgment from going against the incorporated garnishee.

As the garnishment judgment was suffered to go without any plea or proof to arrest its progress, of course it would be contrary to fundamental principles to permit questions settled by that judgment to be reopened and reagitated in a subsequent proceeding, without some allegation sufficient on proof thereof to overcome, restrain, or set aside any other judgment at law. *Shelbina, etc., Ass'n v. Parker*, 58 Mo. 327, and cases cited.

The petition in this case is indeed a nondescript; it is filled with a mass of irrelevant matter wholly foreign to the mere purpose of enjoining the collection of the judgment mentioned; seeks an accounting on matters entirely extraneous to, and independent of, the garnishment judgment; asks a recovery in the sum of $5,000; and seems to have been framed, adapted, and designed to speak thus of its chaotic allegations, with the sole purpose of delay in view. To this petition appear the names of Wm. Carter and Wilson & Whitelaw, as attorneys, and it is sworn to by Louis Houck as president of the corporation.

Plaintiff company gave bond and obtained a temporary injunction, restraining the collection of the judgment. Defendant Holladay, at the March term, 1891, filed an answer to the petition, claiming that plaintiff owed him $17,800 over and above the judgment aforesaid; denied the principal allegations of the petition, and

sought to recover judgment for the amount thus claimed, and upon this filed his motion to dissolve the temporary injunction, which motion does not appear to have been acted on. After the answer of defendant had been filed, the parties *agreed of record* that the cause should be passed to the June adjourned term, 1891, *for trial*. At that term, plaintiff applied for and obtained a change of venue from Wayne county and from the twenty-sixth judicial circuit. The application therefor is in effect the following:

*First.* Undue influence of the adverse party over the mind of the court (Judge JAS. F. GREEN) is charged, and the allegation made that it can not have a fair and impartial trial on this account. *Second.* It is alleged that a fair and impartial trial can not be had by plaintiff in said county of Wayne, because the inhabitants of that county are prejudiced against it, the applicant railroad company. *Third.* Because the opposite party has an undue influence over the inhabitants of Wayne county, and therefore the petitioner can not have a fair and impartial trial.

This application is signed by Wm. Carter, Wm. H. Miller, and M. R. Smith, as attorneys, and is sworn to by Edward F. Blomeyer, general superintendent of the plaintiff corporation on June 3, 1891, at Cape Girardeau, before Rudolph Bohn, notary public.

The cause being sent to Carter county in another circuit, at the October term, 1891, of that court, the parties by entry of record agreed that the cause should be continued till the fourth Monday in January, 1892, and be tried at Poplar Bluff, Butler county, Missouri, and the judgment to be rendered therein in term time in Van Buren, Carter county, as early as convenient thereafter, but no such trial took place.

In June, 1892, plaintiff filed an amended petition in the Carter circuit court, and on the same day defend-

ant Holladay filed his answer thereto. Neither the
amended petition, nor defendant Holladay's answer
differs in any material respect from their predecessors
in pleadings, and the petition is signed by Wm. Carter,
W. H. Miller, and M. R. Smith, and is sworn to by
Louis Houck, as president of the plaintiff corporation,
on the twenty-sixth of January, 1892, though not
filed till nearly four months thereafter.

Soon after the amended petition and answer
thereto were filed, towit, in June, 1892, as shown by
the testimony of E. P. Settle, one of defendants'
counsel, M. R. Smith, one of plaintiff's counsel, was
permitted by consent of said counsel to take said
papers away with him from Carter county, and he,
Settle, had never seen said papers since, nor could the
clerk of the court, Coleman, find said papers after dil-
igent search for the same, and said clerk had not seen
said papers since June, 1892.

At the October term, 1892, of the Carter circuit
court, by agreement of parties, the cause was continued,
presumably to the next term thereafter. The October
term, 1893, of the Carter circuit court began on Mon-
day, the second day of that month. Moses Whybark,
who had been employed on the twenty-seventh of Sep-
tember, 1893, as additional counsel in this case on
behalf of plaintiff, arrived in Van Buren at about 3
o'clock in the afternoon of Monday, October 2, from
Cape Girardeau, where Louis Houck, the president of
the plaintiff railroad, resides. Whybark, who lives in
Marble Hill, Bollinger county, on Sunday afternoon
the first of October, set out from his home and took a
train for Cape Girardeau; why he went there, or whom
he went to visit, his affidavit does not tell us; but at
any rate he went there and remained there all night.
On Monday morning, early, he took the train, and
reached Van Buren at 3 o'clock in the afternoon of

Monday, October the second, as already related, on the first day of the term.

On his arrival, Whybark's first care was to file a motion on behalf of plaintiff for a rule on Louis Houck, president as aforesaid, to show cause why he should not be made a party to this proceeding. This motion was signed by Miller, Smith, and Whybark, as counsel. The orders of the Cape Girardeau court of common pleas, which accompanied the motion, showed that Houck had been appointed receiver of the plaintiff corporation on the fourth of March, 1893, with full powers, etc., etc.

This motion for a rule being taken up, was denied. Had it been granted, it is easy to see that under the provisions of section 2035, Revised Statutes, 1889, it would, as the distance to Cape Girardeau is shown to be seventy miles from Van Buren, have taken at least seven days in order to serve the rule on Houck after the motion had been granted, saying nothing as to a reasonable time which should have been given him in which to answer the rule, so that it would have required a much longer time to have the rule served and answered than is usually allotted for a term of the circuit court in the rural districts; so that this would have occasioned still further *delay*, and sent the case over to the next term.

Besides that, it was entirely within the discretion of the circuit court whether the receiver should be permitted to intervene and be made a party to the litigation, even if he had made a personal application for permission to do so, because a receiver is a mere officer, the hand of the court exercising his functions in the interest of neither plaintiff nor defendant, but for the mutual benefit of all the parties litigant. *Patrick v. Eells*, 30 Kan. 680; High, Receivers [3 Ed.], sec. 1.

And it is held that the receiver *himself* is the proper person to make the application to intervene and be joined with the corporation over which he is appointed, and that to refuse such application when made by the *corporation* is not error. *Ins. Co. v. Jaynes*, 87 Ill. 199; Beach, Receivers, sec. 708.

In many instances it is not·necessary to bring in the receiver; certainly not, where the parties in interest are sufficiently represented before the court to enable it properly to determine the controversy. High, Receivers, secs. 259, 260, and cases cited. And this is the situation in the case at bar.

Again, a receiver is a stranger to all proceedings instituted and in progress prior to his appointment, and this *status* remains until he has been made a party to the action by the order of the court. Beach, Receivers, sec. 708. So that if an action be commenced against a corporation before the appointment of a receiver, there is no legal objection to the continuance of the action in that form until final judgment is obtained. *Tracy v. Bank*, 37 N. Y. 523; *Railroad v. Beggs*, 85 Ill. 80; *Heath v. Railroad*, 83 Mo. *loc. cit.* 621.

In the foregoing circumstances, therefore, there was no error in denying the motion for a rule on the receiver to show cause, etc., even admitting that such was the proper course to pursue in order to make the receiver a party, as to which point there is no warrant or authority to be found.

Nor, in this connection, should it be forgotten that, assuming as true that Houck was appointed receiver on the fourth of March, 1893, no reason is shown, nor excuse given, why application to make him a party, etc., should not have been made at the *April term*, 1893, instead of waiting six months thereafter, and until the cause had been docketed for trial.

Immediately after the denial of the preceding motion, plaintiff's attorney, Whybark, filed an application which he had with him already prepared, for a change of venue. This application was signed by Smith, Miller, and Whybark, and is sworn to at Cape Girardeau by McCarty, the general manager of the plaintiff railroad. This affidavit is dated September 30, 1893, which was the Saturday next before the Sunday when Whybark went on his trip to Cape Girardeau.

The application and affidavit charged the judge of the circuit court, Judge WEAR, with prejudice against the plaintiff railroad, and that defendant Holladay had an undue influence over the mind of said judge, and that in consequence of these grounds the plaintiff railroad could not have a fair and impartial trial, and that the information on which the application for a change of venue was based had come to the knowledge of the affiant since the last term of the Carter circuit court. Dinning, attorney for defendant, on presentation admitted that notice of the intended application was given him at 3 o'clock of the same afternoon. It will be remembered that in the affidavit for a change of venue it was alleged that the opposite party had an undue influence over the mind of *Judge Green.*

The court took up the application for a change of venue, and refused to grant it, giving as reasons that:

"*First.* The application comes after the cause has been twice called on the docket for trial.

"*Second.* Because there has been one change of venue granted the plaintiff heretofore.

"*Third.* Because the application was not made until after the application for a rule to bring in the receiver had been made by plaintiff and the ruling thereon had.

"*Fourth.* Because the application states that the facts came to plaintiff since the last adjournment of

this court and there is nothing to indicate that notice of this application could not have been given to defendant before this cause had been called for trial on the docket.''

There can exist no doubt of the correctness of this ruling. Our statute is explicit that but *one* change of venue shall be granted either party. Sec. 2258, R. S. 1889.

This point alone would be sufficient to dispose of the case in affirmance of the ruling made. But there was no notice given of the intended application for a change of venue; that is to say, no reasonable notice. . An hour or two's notice does not answer the requirements of section 2262, Revised Statutes, 1889.

Section 2261, *Ibid.*, requires that affiant shall state "*when* he obtained his information and knowledge of the existence" of the cause assigned as the basis of the application. Here the statement made is that such information reached affiant "since the last term of the Carter county circuit court." *How long "since"* that term does not appear. Obviously such a statement is not a compliance with the statute, and does not enable the court to determine what diligence, if indeed any, has been employed, after discovering the ground therefor, in applying for the change.

But the worst feature in the matter of this application is the fact that with the sworn information in his pocket that the "opposite party had an undue influence over the mind of the judge," counsel *holds this in reserve*, while he files a motion for a rule, etc., and so soon as he sees this unsuccessful, draws forth and presents the application for a change of venue.

Such conduct will not be tolerated in a court of justice. A party will not be permitted to submit himself to the jurisdiction of a court when he pretends to have information which should prompt him at once to

oust that court of its jurisdiction. He· can not take the chances in any such way. *State to use v. Matlock*, 82 Mo. *loc. cit.* 457.

After the change of venue was denied, the court ordered the cause to proceed, whereupon counsel for defendant informed the court that the last amended petition and answer could not be found and asked for a rule on the clerk, and the clerk responded as already set forth, and then the statement was made by one of defendant's counsel, which is uncontradicted, that the lost papers were in the possession of M. R. Smith, counsel of plaintiff, and that he was by consent of counsel for defendant allowed to take them away in June, 1892, and they had never been seen since. Then counsel for defendant informed the court in the presence of plaintiff's counsel, that he would file certified copies of the original pleadings in case the originals could not be found. There was no objection made by plaintiff's counsel to the lost papers being thus supplied. This ended the first day's proceedings. On the second day of the term, Tuesday, October 3, 1893, defendant's attorney renewed his statement that the lost pleadings were in the possession of M. R. Smith, one of counsel for plaintiff, and that he was informed by Moses Whybark, then present, that Smith, one of his co-counsel, would be present in court at 3 o'clock of that day. Thus ended the second day of the term. On Wednesday, the third day of the term and fourth day of October, 1893, Smith having failed to arrive and the papers not being produced, counsel for defendant were allowed to supply the missing files. The only objection urged by plaintiff's counsel to this was "because no notice of such intention was served to file said papers, had been served on him or plaintiff, or waived by him or plaintiff."

These copies of pleadings were duly verified by one of counsel for defendant, who was familiar with the originals, and had helped prepare the answer, and he also testified as heretofore stated that Smith had taken the lost papers away with him in June, 1892.

No error is seen in this ruling of the circuit court. Independent of the statute a court has the power of supplying its missing papers, records, or files. *State v. Simpson*, 67 Mo. 647. Generally speaking, notice would have to be given to counsel having the papers to produce them, before supplying them, but this was unnecessary in the circumstances of this case.

It is not intimated that the files thus supplied were not in all respects substantial, if not literal, copies of the originals, and in these circumstances it should be held no ground for reversal that the copies were not supplied in strict conformity to the statute. See *Ivy v. Yancey*, 129 Mo. *loc. cit.* 508, for an analogous rule. Reversals should not occur because of nondetrimental error.

The court then again called said cause on the docket, when plaintiff's counsel asked the court to postpone the hearing of the cause until 3 o'clock of that day, to wit, Wednesday the third day of the term and fourth day of October, when the trains would arrive, and presented a verified application for such postponement, the substance of which is the following:

The plaintiff can not safely enter upon the trial of said cause on the third day of October, 1893, and can not as affiant believes enter upon such trial before Wednesday the fourth day of October, 1893, after the arrival of the train, at which time he believes plaintiff can and will be ready for trial. That affiant was not employed as an attorney for plaintiff until the twenty-seventh day of September, 1893. That he had never at any time theretofore been employed by plaintiff as

its attorney in any case.    That affiant is informed and
believes that Hon. M. R. Smith is counsel for plaintiff
in this case and in its business generally, and senior
counsel in this case.    That M. R. Smith resides in
Farmington, Missouri, more than seventy miles from
Van Buren.    That affiant is informed that Hon. W. H.
Miller is associate counsel and that he resides at Jack-
son, Cape Girardeau county, Missouri, more than sev-
enty miles from Van Buren. That said attorneys Hon.
M. R. Smith and W. H. Miller are, as affiant is
informed, familiar with the facts in said case.    Affiant
is informed that the evidence is documentary princi-
pally, and such documentary evidence affiant is
informed is in the possession of said attorneys, M. R.
Smith and W. H. Miller.    Affiant has been informed
that the record and proceedings in this cause are large
and extensive, and the issues involved are of vital
importance to plaintiff and that he has a meritorious
cause of action.    That the affiant is utterly unfa-
miliar with the issues involved in this cause or with
the evidence to be adduced to sustain them.    That
he has had no opportunity to inform himself of the
same, for the reason that his employment has been
only as associate counsel and very recent; he has had
no opportunity to consult with any counsel or individual
familiar with the case.    That he has never practiced as
an attorney heretofore in the circuit court of Carter
county.    That he was enrolled in said court on the
evening of the second day of October, 1893, after the
hour of 3 o'clock.    That he lived in Marble Hill, Bol-
linger county, Missouri, more than seventy-five miles
from Van Buren, Missouri.    That the Current River
Railway is the only railroad running to Van Buren.
That he has been informed and believes that said M.
R. Smith has been detained in the trial of a case in the
circuit court of Madison county, Missouri. That affiant

is informed and believes that said Smith can not get away from said circuit court before Monday, the second day of October, 1893, and can not reach Van Buren before the evening of October 4, 1893. That if the case is postponed until 3 o'clock P. M. of fourth of October, 1893, affiant believes that both of said counsel with their evidence and witnesses will be here and ready for trial.    That the president (Houck) of the plaintiff corporation lives in the city of Cape Girardeau, Missouri, where the general office of the plaintiff is located and in telegraphic communication with the station on Current River Railroad nearest Van Buren.    That he can and will telegraph them to appear in time to arrive at Van Buren the evening of the fourth of October, 1893. That he does not know whether the said W. H. Miller is at his home in Jackson, Missouri.    That he has had no communication with him concerning said cause, but he will attempt to communicate with him by telegraph in time for him also to arrive at the time aforesaid. That affiant left his home at Marble Hill on Sunday evening, went thence to Cape Girardeau, Missouri, that evening, remained over night, and on Monday morning, the second of October, 1893, left for Van Buren, arriving at that place prior to 3 o'clock of that evening.

On the fourth he adds a postscript to this affidavit, and says "that since said affidavit was made he has received a telegram from Louis Houck, president of said road, that he will be here at this court with his attorneys and witnesses on Wednesday evening, October 4, 1893, after the arrival of the train from Hunter."

This application to postpone was argued and submitted to the court and denied.    Then plaintiff took a nonsuit with leave, etc.

This application for a postponement is without

precedent.   There is not a symptom of an excuse why Carter or Miller were not present at the Carter circuit court, and the express allegation is made that "*Miller*" is *familiar with the facts in the case*, and he only some seventy miles away.   Why was not he present, attending to his duties as one of plaintiff's counsel?   Why was he not summoned by telegram?   No effort of the kind was made.   Cases of this sort are largely and for the most part in the discretion of the trial court, a discretion which will not be interfered with by the appellate tribunals unless obviously abused.   *State v. Bailey*, 94 Mo. 311; *State v. Hedgepeth*, 125 Mo. 14; *State v. Jewell*, 90 Mo. 467; *State v. Dusenberry*, 112 Mo. 278.

This point, also, should be ruled against the plaintiff.   And in determining this point it is not wholly immaterial or irrelevant to consider the nature of the petition, and its singular failure to set forth any grounds for enjoining the collection of the garnishment judgment.

Of course if the previous rulings are correct, it must follow that that which refused to set aside the judgment of nonsuit was also correct.   The judgment should be affirmed.   All concur.